IN THE MATTER OF ROBERT D. HUTCHISON,
AN ATTORNEY-AT-LAW.

Argued July 7 and September 14, 1971—Decided October 26, 1971.

*Messrs. Allan M. Rinehart* and *William B. Rosenberg* argued the cause for Somerset County Ethics Committee.

*Mr. Richard A. Norris* argued the cause for respondent.

PER CURIAM. This disciplinary proceeding involves a substantial misuse of clients' funds and serious derelictions in the operation of the trust account of the respondent attorney.

In February 1971 respondent represented two co-executors of an estate and held in his trust account moneys belonging to the estate. On April 21, 1971 he issued a check thereon in the sum of $25,319.54 in purported payment of these moneys. The check was returned for insufficient funds. At the time the check was presented for payment the account

had a balance of only slightly over $5,000, which was reduced a short time later to $770.80 by reason of the payment of other outstanding checks.

When the check was not made good, counsel for the third co-executor filed a complaint with the Somerset County Ethics Committee. During the investigation thereof by the designated Committee members, R. 1:20-4(c), respondent freely admitted that he had wrongfully diverted the estate funds for his own purposes, having unauthorizedly loaned about $10,000 of the moneys to third persons and used the balance for his own business and personal living expenses. He indicated that, by reason of his admissions, no formal hearing was necessary or desired.

As part of the investigation, respondent was requested to make available for the Committee's examination the records of his trust account required to be maintained by R. 1:21-6. So-called records were produced for only a portion of the approximate two-year period during which respondent had been practicing individually and the account maintained. They were woefully deficient. The checkbook showed no record of deposits or of a running balance and many check stubs were blank. No ledger had been maintained for the period covered. Large numbers of the cancelled checks produced were drawn to respondent's own order totalling sizeable sums. In addition the Committee learned that during the period of the account, it had been overdrawn seven times and checks had been returned for insufficient funds on four occasions.

The Committee reported all of the above to this court, which scheduled a hearing on July 7 on an order to show cause why respondent should not be disciplined. At that hearing the matter was continued and respondent was directed to deliver to the Committee at once all records bearing on the operation of the account for the Committee's further examination and report. Respondent did not do so until about six weeks later, during which time he attempted to reconstruct and complete the account records for the full period of its existence. The Committee undertook an audit

thereof and reported further to us. The report indicated that, quite apart from the admitted misuse of the estate funds here involved, the records were still not complete and that the account could not be fully reconciled, with outstanding credits as to several transactions and substantial overdrafts in others.

It is plain not only that respondent misappropriated to his own use about $25,000 of funds of an estate held by him in trust, but also that he had operated his trust account for a long period of time without the required records and, more importantly, without any regard whatever for the proper disbursement of the moneys therein to and only to the persons to whom they rightfully belonged. The records, before reconstruction, clearly indicated that he did not know how much money was in the account let alone to whom it belonged. It is patent that the account had been continuously used for respondent's personal convenience, he hoping against hope that when moneys belonging to others were called for, he would have the funds from some other source to meet the obligation. This robbing-Peter-to-pay-Paul method of operation collapsed when he used the sizeable estate funds here directly involved for other purposes and could not make good when the time came. The course of conduct evidences respondent's inability to be entrusted with clients' and other trust funds.

The offense would call for disbarment were it not for the fact that restitution has been made, although here it has come at a very late date. In May and June something over $11,000 was restored. $13,000, borrowed from outside sources, was not turned over until the day of the first hearing before us and the balance to make up the total misappropriated was not supplied until the day before the second hearing. We have quite generally imposed only a period of suspension from practice when restitution has been made, with the hope that such a penalty will be sufficient for the guilty attorney to recognize the errors of his ways and avoid them in the future. The increasing frequency of cases such

as this and, even in some cases, repetition of the conduct, give us presently great concern whether suspension is adequate.

Under all the circumstances here, however, we are willing to impose only a suspension for one year and until the further order of the court. So ordered.

*For suspension of one year*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*Opposed*—None.